**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**METAWISE GROUP, INC.,**

      **Plaintiff,**

**-vs-**                                            **Case No. 6:05-cv-1050-Orl-31KRS**

**BRAZIL AMAZON TRADING, INC. and**
**BRUNILDA OBUHOSKY,**

      **Defendants.**

## ORDER

This matter comes before the Court on the motion for partial summary judgment filed by the Plaintiff, Metawise Group, Inc. ("Metawise"), (Doc. 76), and for summary judgment filed by the Defendants, Brazil Amazon Trading, Inc. ("BAT") and Brunilda Obuhosky ("Obuhosky"), (Doc. 77). In resolving these motions, the Court has also considered the responses filed by the Defendants (Doc. 81) and Metawise (Doc. 82).

**I.     Background**[1]

In June 2003, Metawise – a California corporation – and BAT – a Florida corporation – entered into an agreement whereby Metawise would buy three loads of manganese ore from BAT. Under the agreement, BAT would be responsible for shipping the ore from a port in Brazil to

---

[1] The following information is taken from the "Material Undisputed Facts" section of Metawise's motion for summary judgment. Although the Defendants disagreed with some of the information in that section of Metawise's motion, they did not do so in regard to any of the information presented in Section I of this opinion.

Metawise's customer at a port in China. Apparently, the first two shipments went off without significant incident.

At some point, BAT hired Hanse Shipping Co. ("Hanse") to arrange transport of the third shipment. Hanse arranged for shipment by an Iranian-owned vessel, which set sail with the ore, bound for China, on February 18, 2004. Both BAT and Metawise contend that they did not know of the ownership of the vessel – the M/V "Iran Ashrafi" – until after it left Brazil with the ore. In March of 2004, after learning of the ownership of the vessel and seeking guidance from the United States Treasury Department, Metawise paid BAT the full amount – approximately $2.2 million – of BAT's invoice regarding the manganese.

Prior to the arrival of the ore in China, the owner of the Iran Ashrafi complained that it had not been paid for the freight. The owner threatened to seize the cargo and auction it off to pay the freight bill. BAT told Metawise that it did not have enough money to pay the freight bill.

On April 20, 2004, Metawise and the Defendants entered into an "Agreement/Promissory Note" (the "Note"). (Doc. 71-2). In the Note, Metawise agreed "to loan US $600,000 to BAT for the payment toward the freight bill for the M/V I. Ashrafi" and to wire transfer "the amount of this loan directly to the owners of the vessel." (Doc. 71-2). BAT agreed to guarantee that, after the wire transfer, the vessel would immediately proceed to the Port of Lianyungang, China, and release the ore to Metawise's customer, with BAT paying any additional costs and expenses incurred if this did not happen. (Doc. 71-2).

BAT also agreed to repay the $600,000 "by deducting the total amount of the loan from the invoice from the next shipment of iron ore, [sic] that BAT sells to [Metawise]," and the parties agreed that the next shipment had to be made by June 15, 2004. (Doc. 71-2). BAT agreed to

discount the price of the ore by 3 percent for that shipment, and Metawise agreed to sign a contract with BAT by April 28th, 2004, with "the terms and conditions for such a contract [to] be mutually agreed." (Doc. 71-2). Finally, the parties agreed that

> Should BAT fail to repay the US$600,000 loan to [Metawise] from the proceeds of said Iron Ore contract, Mrs. Brunilda Obuhosky will then assume personal responsibility for repayment of the loan to [Metawise] no later than June 25, 2004.

(Doc. 71-2). The Note was signed by Ling Li ("Li") for Metawise and by Brunilda Obuhosky ("Obuhosky") both personally and on behalf of BAT. (Doc. 71-2).

Metawise disbursed the loan proceeds, at BAT's request, to the Steamship Mutual Underwriting Association (Bermuda) Ltd. Afterward, according to Metawise, the delivery to Lianyungang ran into another problem. The vessel owner, apparently believing that BAT had breached a settlement agreement, seized a portion of the ore and threatened to auction it off, forcing Metawise to incur additional expenses to recover the ore and satisfy the customer who was to receive the shipment.

The parties did not enter into an iron ore contract by April 28, 2004. The parties did enter into such a contract on August 26, 2004, but BAT did not provide any ore to Metawise. Neither BAT nor Obuhosky has repaid the loan. Metawise has sued BAT for breach of the Note (Count I) and unjust enrichment (Count III), Obuhosky for breaching her guarantee (Count II), and both defendants for fraud (Count IV). Metawise now moves for summary judgment as to the first two counts. (Doc. 76 at 2). BAT moves for summary judgment on its affirmative defenses of illegality and failure of a condition precedent. (Doc. 77 at 1-2). Because the arguments made by the parties in their motions mostly duplicate the arguments they make in the responses to their opponents' motions, the Court will address both motions in a single order.

**II.     Summary Judgment Standard**

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The Court is not, however, required to accept all of the non-movant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir 1994).

**III.     Application**

A federal court sitting in diversity must apply the substantive law of the forum state unless federal constitutional or statutory law compels a contrary result. *Admiral Ins. Co. v. Feit Mgmt. Co.*, 321 F.3d 1326, 1328 (11th Cir. 2003). No party has suggested that another state's law applies to this dispute. Under Florida law, the interpretation of a written contract is ordinarily a matter of law to be determined by the court. *DEC Elec., Inc. v. Raphael Constr. Corp.*, 558 So. 2d 427, 428 (Fla. 1990).

To prevail on its breach of contract claim, Metawise must demonstrate the existence of a valid contract, a material breach, and resulting damages. *J.J. Gumberg Co. v. Janis Services, Inc.*, 847 So. 2d 1048, 1049 (Fla. 4th DCA 2003). The Defendants offer several arguments as to why the Note was not a valid contract. First, they point to paragraph 4 of the Note, which provides that the parties will enter an ore-purchase contract by April 28, 2004 and further states that "the terms and conditions for such a contract shall be mutually agreed." (Doc. 71-2). Under Florida law, the formation of a contract requires mutual assent to a certain and definite proposition. *See, e.g., Robbie v. City of Miami*, 469 So. 2d 1384, 1385 (Fla. 1985). According to the Defendants, the failure to set out the essential terms and conditions of the subsequent ore-purchase contract means that the parties's agreement was too uncertain and indefinite to result in the formation of a contract. However, Metawise is seeking to enforce the Note, not the ore-purchase contract, and the essential terms and conditions of the ore-purchase contract are not essential terms and conditions of the Note.

The Defendants also argue that the failure of the parties to enter into a subsequent ore-purchase contract voids any obligation they might have had under the Note. However, the language of the Note is not susceptible to such an interpretation. Paragraph 3 reads as follows:

> BAT agrees to repay the loan of $US600,000 to MGI[2] by deducting the total amount of the loan from the invoice from the next shipment of iron ore, [sic] that BAT sells to MGI. The next shipment must be made before June 15, 2004.

(Doc. 71-2). Though perhaps clumsily worded, the language of paragraph 3 is clearly describing a potential method for repayment of the loan rather than a condition precedent for such repayment. There is no suggestion in paragraph 3 (or elsewhere in the Note) that the parties intended that repayment could only occur in this fashion, or that a subsequent failure to do business with one another would extinguish BAT's obligation to repay the loan. To the contrary, the repeated use of the term "loan" throughout the Note demonstrates that the obligation to repay the $600,000 was not conditional.

Obuhosky contends that she has not breached the provisions of paragraph 5 of the Note, which reads as follows:

> Should BAT fail to repay the US$600,000 loan to MGI from the proceeds of said Iron Ore contract, Mrs. Brunilda Obhuhosky will then assume personal responsibility for repayment of the loan to MGI no later than June 25, 2004.

(Doc. 71-2). In paragraph 4 of the Note, Metawise agreed to sign an ore-purchase contract by April 28, 2004. (Doc. 71-2). Obuhosky contends her assumption of responsibility was conditioned upon a failure by BAT to repay the loan from the proceeds of the ore-purchase contract referred to in paragraph 4, which the parties did not enter into by the deadline. "BAT did

---

[2]In the Note, Metawise is referred to as "MGI".

not fail to repay the $600,000.00 loan from the proceeds of the contract signed on or before April 28, 2004," Obuhosky argues, "since no such contract was signed by April 28, 2004." This argument is ludicrous. Even accepting Obuhosky's tortured interpretation of paragraph 5, it is undisputed that BAT has not repaid the loan from the proceeds of an ore-purchase contract signed by April 28, 2004 – or from any other source.[3]

Finally, the Defendants argue that the Note is an illegal agreement that cannot be enforced by any court. Metawise does not dispute the Defendants' contention that the M/V Iran Ashrafi was owned or controlled by the Iranian government at the time of the events giving rise to this suit. According to the Defendants, the Note represents an agreement by Metawise to make a freight payment to the M/V Iran Ashrafi, and such transactions involving entities owned or controlled by the government of Iran "violate Executive Order [sic] Nos. 12959; 13059; Iranian Transactions Regulations, 31 C.F.R. Part 560; 50 U.S.C. § 17.05 and 18 U.S.C. § 2332(d)." (Doc. 77-2 at 5). However, despite in some cases quoting portions of the regulations and orders purportedly violated by the Note, the Defendants fail to specify how the violation occurred.

For example, the Defendants quote 30 C.F.R. § 560.204, which prohibits

> the exportation, reexportation, sale, or supply, directly or indirectly, from the United States, or by a United States person, wherever located, of any goods, technology, or services to Iran or the Government of Iran

---

[3] The Defendants also argue that they entered into the Note as a result of duress, (Doc. 81 at 13), and that this duress caused a failure of ratification of the Note, (Doc. 81 at 13-14), but offer no evidence from which a reasonable fact finder might conclude that they were coerced into signing the Note.

(Doc. 77-2 at 5). But the Court sees no way in which either the Note or the underlying freight-hauling transaction provided goods, technology, or services to Iran or its government, and the Defendants do not attempt to explain how they might have done so.[4]

The Defendants come closer to the mark by quoting Executive Order 13059, which was signed by President Clinton in August 1997 and remains in effect. As the Defendants point out (and quote), that order prohibits, *inter alia*, "any transaction or dealing by a United States person, wherever located, including purchasing, selling, transporting, swapping, brokering, approving, financing, facilitating, or guaranteeing, in or related to: (I) goods or services of Iranian origin or owned and controlled by the government of Iran." (Doc. 77-2 at 5). According to the Defendants, "using the services of the [M/V Iran Ashrafi], owned by the government of Iran, is prohibited" under Executive Order 13059. (Doc. 77-2 at 5-6).

However, on the record before this Court, the Defendants have failed to raise a genuine issue of material fact as to whether Metawise used those services. It is undisputed that Metawise did not itself contract with the M/V Iran Ashrafi or the government of Iran, and there is no contention that it used BAT or Hanse to evade the prohibitions on its own ability to do so. Similarly, the Defendants have not raised a genuine issue of material fact as to whether Metawise violated Executive Order 13059 by engaging in "purchasing, selling, transporting, swapping, brokering, approving, financing, facilitating, or guaranteeing" related to the services of the M/V Iran Ashrafi. The Defendants do not address these latter points in their memorandum.

---

[4]The Defendants also purport to quote 31 C.F.R. § 560.206(a), but the passage appearing in their memorandum differs significantly from the text of that regulation. The Defendants also do not attempt to explain how 31 CFR § 560.206(a) might apply to the instant case.

But even assuming that the $600,000 loan from Metawise to BAT was, in effect, paid directly to the owners of the M/V Iran Ashrafi – a factual issue that is not clear on this record – it does not follow that Metawise was using the ship's services or otherwise financing, facilitating, or guaranteeing such services. The transaction involving those services began long before Metawise agreed to pay the $600,000, and there is no suggestion that this underlying transaction was in any way dependent on Metawise's payment or guarantee of such payment. Rather, what Metawise was doing by paying the $600,000 was securing the release of Metawise's own goods, which were about to be auctioned off by the shipowner to pay a debt owed by a third party. Metawise was not facilitating commerce with Iranians or the Iranian government or otherwise engaging in the sort of transaction prohibited by Executive Order 13059 (or by the other orders, regulations and statutes relied on by the Defendants). As such, the Defendants have failed to raise a genuine issue of material fact as to whether the Note was an illegal agreement.

Aside from the arguments rejected above, the Defendants do not offer any challenges to Metawise's contentions regarding the validity of the Note, its breach by the Defendants, or the damages suffered as a result of that breach. Therefore, Metawise has shown that it is entitled to summary judgment on its claims for breach of contract.

In its motion for partial summary judgment, supported by Li's affidavit, Metawise states that it has suffered the following damages as a result of the Defendants' breaches of the Note: the principal loan amount of $600,000; interest of $68,221.80 as of 2/1/2006 plus $147.96 per day; a settlement paid to its Chinese customer "for losses and delays in the vessel's release after arrival in China" – $650,000; the balance owed on that settlement – $251,963.28; legal fees in China of $20,000; the value of the three percent discount on the subsequent iron ore purchase, which

Metawise was entitled to receive under paragraph 6 of the Note – $115,620. Totaling those figures, plus another $9,469.44 in interest from February 1, 2006, results in a damages total of $1,715,274.52.

## IV.   Conclusion

In consideration of the foregoing, it is hereby **ORDERED AND ADJUDGED** that the Defendants' Motion for Summary Judgment (Doc. 77) is **DENIED**, and the Plaintiff's Motion for Partial Summary Judgment is **GRANTED**. Judgment will be entered on Counts I and II of the Complaint in favor of the Plaintiff and against the Defendants, jointly and severally, in the amount of $1,715,274.52.[5]

**DONE** and **ORDERED** in Chambers, Orlando, Florida on April 7, 2006.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

---

[5] Although neither party has raised the issue, the Court assumes that prevailing on the contract claims moots the Plaintiff's unjust enrichment claim (Count III). However, in its fraud claim (Count IV) the Plaintiff seeks punitive damages, suggesting that that claim is not mooted by the resolution of the contract claims.